UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 16-21-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| TIMOTHY HARRIS, also known as | ) | **MEMORANDUM OPINION** |
| "Magic", | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Defendant Timothy Harris has filed a motion to withdraw his guilty plea. [Record No. 410] The Court denied Harris's motion at a hearing held earlier this date. This Memorandum Opinion and Order supplements the Court's oral findings and conclusions regarding the defendant's motion.

## I.

A federal grand jury returned an indictment on June 6, 2016, charging Harris with one count of conspiring to distribute 500 grams or more of methamphetamine and one count of distributing heroin. [Record No. 1] It later returned a superseding indictment on July 28, 2016, charging Harris and others with conspiring to distribute 500 grams or more of a mixture containing methamphetamine and 100 grams or more of a mixture containing heroin. [Record No. 20] Harris was also charged with distributing heroin. *Id.* Following several continuances, trial was scheduled to begin for Harris and a co-defendant (Maurice Sydnor) on December 18, 2017. However, shortly after the matter was reassigned to the undersigned (December 12, 2017), both Harris and Sydnor filed motions for re-arraignment. [Record Nos. 295 and 297]

- 1 -

As a result, the trial previously scheduled for December 18, 2017, was canceled. [Record No. 298]

Harris pled guilty to Count 1 of the superseding indictment on December 18, 2017. [Record Nos. 305, 402] Count 1 charged that he conspired with others to knowingly and intentionally distribute methamphetamine and heroin mixtures in violation 21 U.S.C. §§ 841(a)(1) and 846.

Harris's sentencing hearing was originally scheduled for March 22, 2018. However, approximately one week before this hearing, the Court received correspondence from Harris in which he expressed dissatisfaction with his decision to plead guilty in light of the possible sentence he might receive. [Record No. 357] Harris suggested in this correspondence that his retained attorney, Mark Chandler, provided inadequate representation by leading him to believe that he would receive a shorter term of imprisonment than reflected in his Presentence Investigation Report. *Id.*

At the beginning of the March 22nd hearing, the Court addressed the allegations contained in Harris's letter. The following exchange occurred:

> THE COURT: Before we proceed with the [sentencing] hearing, there's one matter I want to take up. Mr. Harris submitted a letter to the Court, which has been filed in the record as docket entry number 357, indicating that he's displeased with the – I suppose the guideline calculations in this case and states that he's been fooled into entering a plea in this case and is complaining about representation. So I'll need to take that up before we proceed with the sentencing hearing. I want to do this in two parts. First, I want the United States present in order to address any relevant factual information concerning negotiations leading up to the guilty plea in the case on December 18th. I do want to hear about matters such as whether there were certain penalties that were included or discussed, including some of the enhancements in the – that appear in the presentence report, to address some of these questions. Then after the government is able to address those matters, I'll ask you [Assistant United States Attorney ("AUSA") Trimble] to step outside, and then I'll take this matter up

and allow the defendant to provide me with any additional information he thinks would be appropriate.

[Record No. 403, p. 3]

The parties complied with the Court's request, with AUSA Trimble confirming that a notice of enhanced penalties was filed pursuant to 21 U.S.C. § 851 on the day that Harris's counsel filed the motion for re-arraignment (December 14, 2017). This point had been the subject of earlier discussions and/or negotiations, since Harris was believed to have an additional qualifying felony conviction that would have increased his sentence to life imprisonment if he proceeded to trial and was convicted of the pending charges. However, throughout the parties' negotiations, the United States always contemplated filing a notice for enhanced penalties under § 851 with respect to one of Harris's prior convictions.

In addition to addressing the potential enhanced penalties in the written Plea Agreement reviewed and signed by Harris prior to the re-arraignment hearing held on December 18, 2017, the parties made nonbinding recommendations to the Court concerning guidelines calculations in that document. Regarding these issues, AUSA Trimble explained as follows:

> AUSA Trimble: . . . there were two plea offers that were made in this case. One was about a year earlier than the one that was originally – the one that was ultimately made, accepted by the defendant. I can look back and see the differences in the terms, but as I stand here and recollect, I don't believe it was a change in either the mandatory minimum paragraph language discussing the minimum sentence, and I don't believe that there was a change in the – in the agreements between the parties – . . . regarding the enhancements.

> THE COURT: Were there discussions about whether the government would file an 851 notice with regard to one as opposed to two . . . convictions that might qualify, that would then cause the potential range to be a range of life imprisonment?

> AUSA Trimble: Your Honor, there was, -- the only discussions that were ever [held] between the parties were contemplation [of] filing one 851. This case, if my memory serves me correctly, was originally indicted during a prior

- 3 -

administration, a little bit of a different view, the Smart on Crime initiative, aware of the Holder memorandum, and there was only ever discussions with the – with the defendants and the filing of one 851. . . . I always represented there could be circumstances, factual circumstances, in the case that could – could change that initial analysis that was made. But from the very first plea offer to the final plea offer, there was not a representation or circumstance which one 851 would not be filed – that any 851s would not be filed.

THE COURT: Is it the government's position that the defendant has received a benefit from the plea agreement itself based on the possibility of two qualifying felony convictions? In other words, if the defendant is allowed to withdraw his guilty plea at this point, and the matter proceeds to trial, and if he is convicted, is it the government's position that there could be two qualifying felony convictions, as that term is defined by 802, subsection (44), specifically paragraphs 85 and 89 [of the PSR]?

AUSA Trimble: Your Honor, if I understand your question correctly, I do agree that there are two potential qualifying felony drug convictions that could have – that could be listed in an 851, or could have been listed in an 851 in this case.

[*Id*. at pp. 5-7] Counsel for the government was excused from the courtroom following this questioning.

After the Court summarized the defendant's letter, Harris's attorney made the following representations regarding Harris's claim that he had been coerced into entering a guilty plea against his will:

MR. CHANDLER: . . . Judge, we did have discussions on a number occasions concerning this case, the possible outcomes, potential outcomes of the case, either through trial or through a plea. We talked about the possibility of a second 851 being filed against Mr. Harris, which could result in a life sentence. We talked about if the case proceeded to trial, I felt like it increased his chance of obtaining a life sentence. Basically, we discussed that there were no – there really were no good options for Mr. Harris. About the only thing he had going for him was his acceptance of responsibility, and the government and our good faith calculation of what we thought the applicable guidelines should be that were placed in the plea agreement. We – we discussed all of the possible penalties, how the guidelines work, how his criminal history works, the fact that the guidelines are advisory and that we could make other arguments to the Court concerning his sentencing. I think we covered every area that we could cover on advising him of the potential penalties and what he was facing.

- 4 -

THE COURT: Did you have any conversations with members of the probation office about potential penalties in the case or guideline calculations?

MR. CHANDLER: I did not, Judge.

THE COURT: Because it appears that based on the information that was available to the probation office, that these enhancements that have been included in the presentence report were certainly within their contemplation, including the firearm issue, which I believe there were some – some suppression issues that were raised earlier, so it would have been at least known, issue of credible threats of violence, and also maintaining a drug premises –

MR. CHANDLER: Yes, sir.

THE COURT: -- which would take the defendant up to [a] total offense level of 41, even with acceptance of responsibility, because the parties included in their plea agreement the four-level increase for the defendant's role in the offense.

MR. CHANDLER: Right.

THE COURT: So if all that information was known at the time – and here is where I am coming from. If all that information was known and considered at the time, even [if] one or two of these enhancements were considered, the guideline calculations are not that far from what the parties would have been discussing, number one. Number two, at the time the defendant's plea was entered I ensured – I made it clear that the final range would not be known until the presentence report was prepared, and it would be impossible for counsel or the Court to know exactly what the range would be at that time.

MR. CHANDLER: Right.

THE COURT: So it was clear that the defendant acknowledged and understood that, that we would have to wait and see what the presentence report looked like.

MR. CHANDLER: And he has . . . sticker shock. . . . The enhancements add a little over eight years to his range.

[Sealed Record No. 404, pp. 3-6]

Chandler then provided further explanation regarding his plan to ask for a departure from the guideline range due to potential overstated criminal history. Thereafter, Defendant Harris was given the opportunity to provide additional information concerning his claims.

After acknowledging that he met "many times"[1] with his attorney, Harris represented that Chandler provided "ghost calculations" of what his sentencing guideline range was expected to be, or according to Harris, "pretty much what it was going to be, and it wouldn't have been my intention under any other circumstances." [*Id*. at pp. 7-8] Harris did not provide other information regarding his previous written claim that his attorney had pressured him against his will into entering a guilty plea.

Against this backdrop, it is necessary to go back to parties written Plea Agreement and review discussions and representations made during the re-arraignment hearing to look for any evidence that Harris: (i) was coerced by his retained counsel; (ii) expressed any belief that the proposed guideline range -- as outlined in the parties' Plea Agreement -- was binding on the Court; or (iii) did not fully or completely acknowledge his guilty. But a full and complete review reveals no such credible evidence.

Harris signed the final version of his written Plea Agreement on December 14, 2017 (the same day that he moved for re-arraignment). [Record No. 306] The documents follows the format of plea agreements commonly used in this district. In paragraph 1, the parties agreed that Harris would enter a guilty plea to Count 1 of the Superseding Indictment which charged him with conspiring to distribute 500 grams or more of a mixture or substance containing methamphetamine and 100 grams or more of a mixture or substance containing heroin. In exchange, the remaining counts would be dismissed at the time of sentencing. Next, the parties outline the elements that the government would be required to prove if the matter proceeded to trial on Count 1 (paragraph 2 of Plea Agreement). In paragraph 3, the parties outline the

---

[1]      Harris later disputes this admission that he met with Chandler "many times."

facts that could be proven regarding Count 1. Harris acknowledged that the facts were correct and could be proven by the requisite standard if the matter proceeded to trial.

Paragraph 4 references the enhanced statutory penalty Harris faced as a result of a prior qualifying felony drug conviction. In other words, at the time Harris signed the Plea Agreement, the parties contemplated and acknowledged that notice of the qualifying conviction would be filed pursuant to 21 U.S.C. § 851.

Then, in paragraph 5, the parties made certain non-binding recommendations to the Court regarding calculation of the defendant's guideline range of imprisonment. This paragraph states:

5. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. *This recommendation does not bind the Court.*

(a) The United States Sentencing Guidelines (U.S.S.G.) manual in effect at the time of sentencing will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes a quantity of heroin and methamphetamine with a combined marijuana equivalency of at least 10,000 kilograms but less than 30,000 kilograms.

(c) Pursuant to U.S.S.G. 3B1.1, increase the offense level by 4 levels because the Defendant was an organizer or leader of a criminal activity that involved five or more participants.

(d) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(Italics added by the Court for emphasis.)  [*Id*. pp. 2-3]

As noted previously, a hearing was held on December 18, 2018, for the purpose of allowing Harris to enter a guilty plea to Count 1 of the Superseding Indictment pursuant to the written Plea Agreement negotiated with the United States.  [Record No. 402]  After being sworn to testify truthfully, Harris was reminded of the consequences of providing false statements during the proceeding.  [*Id*. at pp. 2-3]  Likewise, he agreed to advise the Court if he did not understand a particular question being asked.  [*Id*. at p. 4]  Harris then explained, in response to specific questions, that he has an eleventh grade education but had obtained a general equivalency diploma and is able to read and write.

Harris was not receiving medical or mental health treatment at the time of the hearing. In fact, he has not previously received any type of mental health counseling or treatment and has never been diagnosed as having any mental health issue or condition.  And at the time of the hearing, Harris was not under the influence of drugs or alcohol.  [*Id*. at p. 6]

Neither Chandler nor Harris indicated at any point during the December 18 hearing that either had problems communicating about the case.  And when asked about his satisfaction with the representation provided by Chandler and his review of the written Plea Agreement, Harris gave the following, unambiguous and unequivocal responses:

> THE COURT:  Are you satisfied with the advice and the representation that he's [i.e., Chandler] given you to this point in the case?
>
> DEFENDANT HARRIS:  Yes, sir.
>
> THE COURT:  All right.  I have received your plea agreement, which is a five-page document.  On the last page it has the attorneys' signatures, and it also appears to have your signature, dated December 14th, and those same signatures appear on the supplement to the plea agreement.  It appears that you signed the supplement today, December 18th.  Let me first confirm that this is your

- 8 -

signature on both documents and that you signed both documents on the dates indicated. Is that correct?

DEFENDANT HARRIS: Yes, sir.

THE COURT: Before signing these documents, did you have the opportunity to review each one?

DEFENDANT HARRIS: Yes, sir.

THE COURT: And you discussed the documents with your attorney; correct?

DEFENDANT HARRIS: Yes, sir.

THE COURT: If I take these two documents together, the plea agreement and the supplement, does this represent the only agreement that you have with the government in the case?

DEFENDANT HARRIS: Yes, sir.

[*Id*. at pp. 8-9]

After AUSA Trimble reviewed the relevant portions of the document, Harris acknowledged that it accurately represented his agreement with the government. This includes paragraphs 12 (that the Plea Agreement and supplement contained the complete and only agreement between the United States and the defendant and that the United States had not made any other promised not contained in the agreement) and paragraph 14 (that Harris's attorney had fully explained the Plea Agreement to the defendant and that his entry into it was voluntary). [*Id*. at pp. 12]

Harris then responded to the Court's questions touching on other promises, threats, pressure, or duress leading to the guilty plea:

THE COURT: Other than what's contained in the plea agreement and the supplement to the plea agreement, have there been any other promises that have been made to you that have either caused you to sign these documents or to indicate that you wish to enter a guilty plea in this case?

DEFENDANT HARRIS:  No, sir.

THE COURT:  Has anyone made any threats or in any way forced you either to sign these documents or to enter a guilty plea in the case?

DEFENDANT HARRIS:  No, sir.

[*Id*. at pp. 12-13]

Next, Harris acknowledged the statutory penalties outlined in the Plea Agreement (i.e., not less than twenty years and not more than life imprisonment) were enhanced penalties based on a prior, final felony drug conviction from the Jefferson Circuit Court (Case No. 07-CR-3619-001) which he also confirmed.  [*Id*. at pp. 13-14]  And after explaining the procedure for resolving objections to any guideline calculations contained in his PSR, the Court specifically explained that the final guideline range could not be determined in advance of the sentencing hearing.

THE COURT:  . . .  Now, I would need to resolve any objections before we could proceed with the sentencing hearing.  But do you understand that until that process takes place it will be impossible for the Court, or for your attorney, to know exactly what the guideline range would be in your case?  Do you understand that?

DEFENDANT HARRIS:  Yes, sir.

[*Id*. at p. 16-17]

After reviewing and discussing: (i) the statutory factors to be considered prior to imposition of the sentence [*id*. at pp. 18-19] and (ii) the waiver provisions contained in paragraphs 7 and 8 of the Plea Agreement [*id*. at pp. 19-20], the Court cautioned Harris that he would not be able to withdraw his guilty plea if he were later dissatisfied with the final sentencing guidelines range.

THE COURT:  . . . let me mention to you that[,] again you'd be able to appeal under the circumstances that we have just discussed with regard to the sentence,

but you would not be able to withdraw from your plea agreement; for example, if your attorney's prediction or your belief about your guidelines were to be incorrect. Also, if the sentence that's imposed in your case would be more severe than you expect, you might be able to appeal the sentence under the circumstances that we've outlined, but that would not be a reason to withdraw from the plea agreement provided that the sentence is a legal sentence.

[*Id.* at pp. 21-22]

Next, after being advised of the rights that he would be waiving by entering a guilty plea, Harris pleaded guilty, offering the following explanation of his conduct:

DEFENDANT HARRIS: I agreed with other people to sell methamphetamine and heroin in the Pulaski County area.

THE COURT: All right. Was it in the amounts that are set forth in Count 1 of the superseding indictment?

DEFENDANT HARRIS: Yes, sir.

THE COURT: And did your actions take place during the time that's been charged in the indictment in Count 1?

DEFENDANT HARRIS: Yes, sir.

THE COURT: And you indicated that one or more of your actions was in Pulaski County, which is in the Eastern District?

DEFENDANT HARRIS: Yes, sir.

THE COURT: Your plea agreement has a factual summary that is outlined in paragraph 3 . . . I know that you've had the opportunity to review that with your attorney. Is the information in paragraph 3 true and correct to the best of your knowledge and belief?

DEFENDANT HARRIS: Yes, sir.

THE COURT: And if this case were to proceed to a jury trial, the government would be required to prove the elements outlined in paragraph 2 to obtain a conviction. And do you believe the government could prove those elements with regard to your actions with the requisite burden of proof, which is beyond a reasonable doubt?

DEFENDANT HARRIS: Yes, sir.

THE COURT: Is it your intention to enter a plea of guilty to this count because you are, in fact, guilty.

DEFENDANT HARRIS: Yes, sir.

[Id. at pp. 26-27]

Finally, after accepting the defendant's guilty plea, the hearing concluded with the following exchange with the defendant:

THE COURT: . . . Mr. Harris, I've asked you quite a few questions this morning, and it does appear to me that you've understood my questions. Let me make sure that's the case. Is there anything that I asked you, and you really weren't sure what I was asking, but you went ahead and answered anyway, either out of courtesy or for some other reason?

DEFENDANT HARRIS: No, sir.

THE COURT: All right. Do you have any questions for me at this time?

DEFENDANT HARRIS: No, sir.

[*Id*. at pp. 29-30]

The PSR was prepared and submitted to the parties for review on or about February 16, 2018. It was later revised on March 12, 2018. During the intervening period, Harris's attorney (Mark Chandler) submitted an objections letter to the Probation Officer responsible for preparation of the PSR. The letter is dated March 1, 2018, and outlined objections to two specific offense characteristics which had been applied in the PSR to enhance Harris's guidelines range.[2] The enhancements relate to paragraphs 65 and 66 of the PSR. For purposes of the defendant's present motion to withdraw his guilty plea, it is noteworthy that these

---

[2]     Harris's first letter is undated but postmarked March 9, 2018. [Record No. 357] Thus, it appears that he reviewed the PSR with counsel after it was submitted by Probation Officer Reynolds for the parties' review.

particular enhancements had not been identified by the parties in paragraph 5 of the written Plea Agreement.

Additionally, counsel objected to a criminal history point being assessed for a conviction identified in paragraph 90 of the PSR for failure to maintain insurance. After a three-level reduction for acceptance or responsibility, Harris's recommended Total Offense Level in his PSR was calculated as 41. This, combined with a Criminal History Category of V (based on 12 criminal history points), resulted in a non-binding advisory guideline for imprisonment of 360 months to life.[3]

With this summary, the Court returns chronologically to the aborted sentencing hearing of March 22, 2018. At the conclusion of this hearing, the Court advised Harris of the possible consequences of an unsuccessful attempt to withdraw his guilty plea as well as some of the factors that would need to be addressed if his subsequently filed such a motion. However, based on the claims being made, the Court did not address at that time whether Harris could withdraw his guilty plea. Instead, Chandler was permitted to withdraw from the case and new counsel was appointed under the CJA following the submission of a financial affidavit by the defendant.

The sentencing hearing was rescheduled for Friday, May 11, 2018. *Id.* Following his appointment, Harris's new attorney requested copies of the transcripts of the December 18, 2017, and March 22, 2018 hearings. Those transcripts were filed in the record on April 12, 2018. [Record Nos. 402, 403 and 404]

---

[3]     If Harris loses credit for acceptance of responsibility as a result of the present motion to withdraw his guilty plea, his Total Offense Level will increase to 43, resulting in a non-binding range of imprisonment under the guidelines of life.

Appointed counsel filed the present motion on May 3, 2018.[4]   Around the same time

(and most likely with the benefit of the transcripts his attorney had acquired previously), Harris

submitted a second letter to the undersigned, again complaining about his first attorney, Mark

Chandler.  The letter states:

> I am writing this letter at this time to ensure that it will be fresh on the mind of
> the Court. I am not trying to obstruct justice in any way, shape, form, or fashion.
> I just want to make the court aware of all the things my former lawyer did now
> since he can't see this letter or be standing beside me in court to discourage me
> which it did and, the fact that he has had relations with my family for years.  I
> was coerced by him into taking that plea.  Everytime we would meet *which was
> not much* I asked for things that had to do with the evidence from this case.  *He
> only brought a portion of it one time.*   I understand calculations are to be
> determined, but I'm really lost about the whole process.  Again the first plea that
> was allegedly offered was told to me over the phone that I never saw in writing.
> Now the difference on the December 14th plea was in writing and he pulled out

---

[4]      Harris makes five factual claims in the written motion to withdraw his guilty plea.  They
are:

1.   Chandler did not bring evidence in the case for Harris to review.  Instead, he simply
presented Harris with sentencing and plea information.
2.   Chandler did not perform pretrial research or review possible defenses despite being
requested to do so.
3.   Chandler was more concerned with his fees than possible defenses to the charges Harris
faced.
4.  Chandler "became aggressive" with Harris regarding signing the plea agreement and also
advised Harris that he had talked with family members who expressed the desire that Harris
plead guilty.
5.   Chandler told Harris how to respond to the Court's questions during the change of plea
hearing and Harris simply did as he was told.

[Record No. 410, pp. 1-2]

Harris's present counsel recites the factors that the Court should consider in
determining whether there is a fair and just reason to allow a defendant to withdraw a guilty
plea.  [Record No. 410, pp. 2-3]  But he then argues that the enumerated factor regarding the
circumstances underlying entry of the plea is so overwhelming that it overcomes all other
factors the Sixth Circuit has identified for consideration.  Thus, in essence, Harris claims that
ineffective assistance of counsel provided by Chandler is all that need be shown to prevail.
While the Court will certainly consider the merit of this claim (i.e., the fourth factor), it will
also consider all other relevant factors.

- 14 -

federal guidelines manual and pointed it out in "black and white" and said that would be my range which he showed me. He did not say there would be any difference made. He got aggressive with me both on the phone with the first plea and the second plea. He also called my family threatening them with what the government was going to do angering and upsetting them making them believe he could work wonders he could not causing conflict between us because of the deceit the ultimatum was to sign the plea or be disowned by my family. Again at the plea change hearing I expressed wanting to back out of or withdraw the plea because it was really not my intent. He just overtalked me and told me to answer "yes" to all the questions and that's what I did really feeling in my mind and heart no. I have been done a great injustice and have been discouraged a lot and have had my trust broken and I am hopeful yet skeptical of my new lawyer as to how efficient he can be on 30 days['] notice of my case. I'm tired of allowing people to overtalk me because I think they are smarter than me. I have a right to justice and deserve a fair shake at finding out everything that happens or is going on in my case as this is a very serious matter and I'm asking that no bias and justice to be served on my behalf.

(Italics added by the Court for emphasis.) [Record No. 414]

## II.

A defendant does not have an absolute right to withdraw a guilty plea and bears the burden of proving that he is entitled to do so. *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (citing *United States v. Mader*, 251 F.3d 1099, 1105 (6th Cir. 2001)). Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure provides that a defendant may withdraw a guilty plea after the court accepts it, but before the Court imposes a sentence if the defendant can show a "fair and just reason" for requesting the withdrawal. This rule is designed so that a "hastily entered plea made with an unsure heart and confused mind" may be undone. *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991). However, the rule does not permit a defendant to "make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *Id.* (citations omitted).

The Court considers a number of factors in determining whether the defendant has shown a fair and just reason for requesting withdrawal. *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008). They include:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* (citing *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)). No one factor controls and the relevance of each varies based on the "circumstances surrounding the original entrance of the plea as well as the motion to withdraw." *Id.* (citations omitted).

## III.

Harris contends that the circumstances surrounding the entry of the guilty plea (Factor No. 4) are such that they "overwhelm and overcome" the other factors the Court is to consider. However, an analysis of this factor, either alone or in combination with all others that are relevant her, do not support the defendant's argument.

"When a defendant has a change of heart and asks the Court to withdraw his plea, he must do so without unwarranted delay." *United States v.* Culp, 608 Fed. Appx. 390, 391 (6th Cir. 2015). Harris reviewed and then signed his final, written Plea Agreement on December 14, 2018. However, he did not express dissatisfaction with his counsel's performance or his interaction with him until after the PSR was submitted for the parties' review. Although a precise calculation is debatable, Harris's March 9, 2018, letter was sent approximately 80 days after entry of his guilty plea. Numerous decisions have found that delays of this magnitude weigh against granting a motion to withdraw. *See United States v. Benton*, 639 F.3d 723, 727

(6th Cir. 2011) ("this Court has declined to allow plea withdrawal when the intervening time periods were as brief as one month."); *United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir. 1999) (when defendant waited 77 days to file a motion to withdraw, the strongest factor supporting the district court's denial of the motion was the interval between the plea and the filing of the motion); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (finding 67 days excessive); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (finding 55 days excessive); *United States v. Spencer*, 836 F.2d 236, 239-40 (6th Cir. 1987) (refusing to allow a defendant to withdraw his guilty plea when he waited five weeks after entry to file motion).

Further, Harris has not adequately explain why he did not complain about his attorney at an earlier time. But that reason is obvious to the Court. First, Harris did not have any good options. The evidence against him is particularly strong, as he has admitted. Second, the trial date was quickly approaching and several co-defendants were expected to testify against him. And Harris could not realistically expect to receive another continuance. Third, the government could file notices of prior convictions under 21 U.S.C. § 851 which would essentially guarantee a life sentence if he proceeded to trial and was convicted. As a result, Harris accepted the last and best offer from the government. But with acceptance of responsibility and the possibility of arguing that his criminal history was perhaps overstated, he still would be in a position to argue for a reduced sentence.

During the change of plea hearing, the Court explained – and Harris acknowledged – that his guidelines range would not be known until the PSR was prepared. Harris was not surprised by this. In fact, he acknowledged in his written Plea Agreement that the recommendations that were contained in paragraph 5 were just that: non-binding recommendations to the Court.

Attorney Chandler aptly described Harris's reaction as "sticker shock" when he received and reviewed the PSR.  Thus, the Court concludes that Harris settled on a plan at that time of trying to back out of his agreement reached with the government.  And the only way to do this would be to assert that he had been misled (as claimed in his first letter) or coerced (as claimed in his second letter and motion) by his retained attorney.  However, the Court rejects Harris's attempt to avoid his admissions, under oath, based on claims that his attorney was forcing him to agree to the questions posed by the Court.  It bears repeating:  the undersigned carefully considered each answer while observing both Harris *and* Chandler.  The defendant was given ample time to respond and he did so without duress or pressure from anyone.

Importantly, Harris has not asserted that he is innocent.[5]  Instead, his Plea Agreement and the sworn statements given during his re-arraignment hearing clearly demonstrate his guilt. Harris acknowledged that the government could prove his guilt and he admitted that he was pleading guilty because he was guilty.  [Record No. 402, p. 27]  Regarding this factor, the Court notes that "[a] defendant's statements at a plea hearing should be regarded as conclusive [as to truth and accuracy] in the absence of a believable, valid reason justifying a departure from the apparent truth of those statements."  *United States v.* Owens, 215 Fed. Appx. 498, 502 (6th Cir. 2007) (citations omitted).  *See also United States v. Martin*, 668 F.3d 787, 796 (6th Cir. 2012) (denying the defendant's motion to withdraw his plea, in part, because following the plea hearing, the defendant expressly reaffirmed his guilt multiple times); *United*

---

[5]     The United States outlines the defendant's conduct and some of the evidence regarding his guilt in its response to the pending motion.  [Record No. 412, p. 1-2]  Harris's actions are more fully detailed in the PSR which has not yet been filed in the record.

*States v. Ryerson*, 502 Fed. Appx. 495, 500 (6th Cir. 2012) (noting that the defendant had "stated under oath, in open court, that the factual basis [provided in the plea agreement] was true and pleaded guilty" to the charge and ultimately denying his motion to withdraw his plea). Thus, this factor also weighs against granting the motion to withdraw.

And contrary to his claims, the circumstances surrounding the entry of Harris's guilty plea weigh against granting the relief requested. Harris's complaints about his retained attorney were not raised or even mentioned during the December 18, 2017, hearing. Instead, when Harris was questioned by the Court, he responded that he was satisfied with the advice and representation provided by Chandler. [Record No. 402, p. 8] In evaluating whether the circumstances provide reason to permit the defendant to withdraw a guilty plea, the Court considers whether the defendant was able to fully understand the plea agreement's terms and agreed to it knowingly and voluntarily. Here, as outlined more fully above, there is absolutely no indication that Harris did not fully understand the terms of his Plea Agreement. Further, there is absolutely no basis to conclude that the guilty plea was anything other than knowingly and voluntary made. *See Baker v. United States*, 781 F.2d 85, 88 (6th Cir. 1986) (citing *Brady v. United States*, 397 U.S. 742, 747 (1970)). The undersigned closely examined Harris regarding, *inter alia*, his: (i) competence; (ii) understanding of the consequences of his actions, and (iii) the voluntariness of the plea before accepting it as required by Rule 11(b) of the Federal Rules of Criminal Procedure.

It bears repeating that Harris's letters to the Court reveal the real reason he wishes to withdraw his guilty plea; he had hoped for (or perhaps expected) a lower recommended guideline range for incarceration in his PSR. He stated in his initial letter that Chandler "had [him] under the impression that [he] was looking at a lot less time than [he is] facing at this

point." [Record No. 357, p. 1] And in his most recent letter, Harris states that, prior to his signing the written Plea Agreement, Chandler "pulled out a federal guidelines manual and pointed it out in 'black and white' and said that would be [his] range . . . he did not say there would be any differences made." [Record No. 414] But these claims are insufficient in light of the clear warnings given during the December 18, 2017, hearing regarding the matter in which the guidelines range would be calculated and the effect of the parties' recommended guidelines calculations. If Harris was confused or had been misled as his claims, the Court's colloquy with him cleared up any such misunderstanding. In short, by the time he pleaded guilty to Count 1 of the Superseding Indictment, Harris was fully informed, fully aware, and completely knowledgeable of the consequences of his decision.

Next, Harris's background and experience, particularly his experience with the criminal justice system, does not weigh in favor of allowing him to withdraw his plea. He has convictions in fourteen cases, including two felony drug convictions. Harris's criminal history begins when he was 18 years' of age. As a result of a robbery conviction, he was sentenced to ten years' of incarceration. And while he was granted shock parole a few months after his sentence was imposed, Harris did not take advantage of that opportunity. Instead, he has continued to commit offenses on a regular basis. As a result, he has twelve criminal history points, placing him in Criminal History V under the United States Sentencing Guidelines. This prior experience suggests that, by December 2017, he fully understood the nature of the process and was aware of the ramifications of entering a guilty plea. *See United States v. Catchings*, 708 F.3d 710, 719 (6th Cir. 2013) (recognizing that a defendant in Criminal History Category III has fairly extensive prior experience with the criminal justice system). And the

fact that his prior experience concerns state offenses is of no consequence. *United States v. Goodloe*, 393 Fed. Appx. 250, 256 (6th Cir. 2010).

Considering all of the above factors, there is simply no indication that Harris's decision to enter into a guilty plea was a hasty decision made with an "unsure heart and confused mind." *See Alexander*, 948 F.2d at 1004. Certainly, the alleged reasons for Harris's decision to withdraw his plea would have been known to him within days of entering it. However, Harris waited until after the presentence report was completed and the sentencing realities became more known before deciding that pleading guilty was the wrong decision. But this is not a valid basis for withdrawing a guilty plea. *Id.* In short, the following factors weigh against allowing the defendant to withdraw his guilty plea: (1) the amount of time that has lapsed between his guilty plea and the notice provided to the Court in his first letter that he wished to withdraw the plea due to claims against his retained counsel; (2) the lack of any valid reason for failing to move for withdrawal earlier in the proceeding; (3) the failure to assert a claim of actual innocence after the change of plea hearing in December 2017; (4) the circumstances underlying the entry of the guilty plea. Contrary to his arguments, these circumstances support the Court's conclusion that Harris's decision is based on the recommended guidelines calculations contained in his PSR; and (5) the defendant's nature and background, which includes consideration of (6) Harris's extensive history within the criminal justice system.

Finally, the government is only required to prove prejudice if the defendant is able to establish a fair and just reason to grant withdrawal. *United States v. Wynn*, 663 F.3d 847, 850 (6th Cir. 2011); *United States v. Spencer*, 836 F.2d 236, 240 (6th Cir. 1987). Accordingly, no showing of prejudice is required. However, the Court cannot conclude that prejudice would not result if the defendant were allowed to withdraw his guilty plea at this late date. The Sixth

Circuit has recognized that the cost associated with a second preparation for trial can constitute prejudice under the applicable rule. *See United States v. Durham*, 178 F.3d 796, 799 (6th Cir. 1999). Because Harris has failed woefully to meet his burden of showing that a fair and just reason exists to allow the guilty plea to be withdrawn, the Court need not reach any final conclusion concerning the extent of prejudice that would be suffered by the government (i.e., preparation for trial, location of fact witnesses, retention of expert witnesses) if the relief sought were granted. Clearly, however, a substantial degree of prejudice would occur if Harris's guilty plea were set aside.

## IV.

Based on the foregoing analysis, and as further explained during the hearing held this date, it is hereby

**ORDERED** that Defendant Timothy Harris's motion to withdraw his guilty plea [Record No. 410] is **DENIED**.

This 11th day of May, 2018.

Signed By:

*Danny C. Reeves* DCR

United States District Judge