UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 6: 16-021-DCR-1 |
| | ) | and |
| V. | ) | Civil Action No. 6: 20-025-DCR |
| | ) | |
| TIMOTHY HARRIS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant/Movant Timothy Harris has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  [Record No. 467]  He asserts two claims of ineffective assistance of counsel: first, that retained counsel Mark Chandler failed to investigate his defense prior to Harris' guilty plea; and second, that Chandler did not properly inform him of the applicable United States Sentencing Guidelines ("U.S.S.G.") range prior to entry of the plea.  Harris also requests an evidentiary hearing.  [Record No. 479, p. 6]

The matter was referred to United States Magistrate Judge Edward B. Atkins for the preparation of a Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge Atkins issued a Recommended Disposition on May 13, 2020.  [Record No. 495]  In relevant part, the magistrate judge recommended that the Court deny the motion on both grounds, found an evidentiary hearing to be unnecessary, and indicated that no Certificate of Appealability ("COA") should issue.

Harris submitted objections to the Recommended Disposition dated May 27, 2020.  [Record No. 498]  He objects to the magistrate judge's conclusion that he has failed to

demonstrate prejudice by Chandler's alleged deficient performance regarding the failure to investigate claim, and he specifically argues that the Recommended Disposition overlooked that later-appointed counsel Jaron Blandford proved witnesses were lying and dishonest. [*Id.* at p. 2] Further, Harris challenges Magistrate Judge Atkins' conclusion that he has not demonstrated prejudice for his second claim involving Chandler's purported miscalculation of the applicable guidelines range prior to the entry of his guilty plea. [*Id.* at pp. 3-4] Harris generally contends that he would not have pleaded guilty if Chandler had provided effective counsel and states that his lawyer "wanted to impose his will of pleading out." [*Id.* at p. 4] In accordance with Magistrate Judge Atkins' order, the United States responded to the objections on June 18, 2020. [Record Nos. 495, p. 13 and 502] The matter is now ripe for review.

Although this Court must make a *de novo* determination of those portions of the Magistrate Judge's recommendations to which timely objections are made, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Nonetheless, out of an abundance of caution, the Court has considered the record in its entirety and conducted a *de novo* review of the matter. Based on this review, Harris' motion will be denied without an evidentiary hearing, and no COA shall issue.

## I.

The Kentucky State Police ("KSP") arrested Harris on June 9, 2016, after an investigation into the defendant's role in a methamphetamine and heroin trafficking conspiracy. [*See* Presentence Investigation Report ("PSR") ¶ 16.] The KSP seized 1,193.5 grams of methamphetamine after searching the defendant's car upon his arrest. [*Id.*]

A federal grand jury returned an indictment against Harris on June 23, 2016, and a Superseding Indictment on July 28, 2016.  [Record Nos. 1 and 20]  The Superseding Indictment charged Harris with two counts: (1) conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 100 grams or more of a mixture or substance containing a detectable amount of heroin in violation of 21 U.S.C. § 846; and (2) distribution of heroin in violation of 21 U.S.C. § 841(a)(1).  Attorney Willis Coffey was initially appointed to represent Harris but was permitted to withdraw after Harris retained Chandler in July 2016.  [Record No. 19] Following several continuances, Harris and co-defendant Maurice Sydnor's trial was scheduled to begin on December 18, 2017.  [Record No. 291]

Harris filed a motion for re-arraignment on December 14, 2017.  [Record No. 295]  In connection with the motion, he signed a plea agreement with the government, indicating that he would plead guilty to one count of conspiring to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 100 grams or more of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 846.  [Record No. 306] Pursuant to the agreement, the parties would recommend one sentencing enhancement: a four-level adjustment for Harris' role as a leader or organizer of the drug conspiracy pursuant to U.S.S.G. § 3B1.1.  [*Id.* at ¶ 5(c)] However, the document also states that "the United States and the Defendant . . . may object to or argue in favor of other recommendations.  [The plea agreement's] recommendation does not bind the Court."  [*Id.* at ¶ 5]

During the re-arraignment hearing held on December 18, 2017, Harris was placed under oath and swore to tell the truth subject to the penalty of perjury. [Record No. 402, p. 3] He testified that he had reviewed the charges with Chandler and understood them. [*Id.* at pp. 7-8] The Court then inquired as to Harris' desire to enter the plea as well as his knowledge of the plea's consequences:

> THE COURT: Other than what's contained in the plea agreement and the supplement to the plea agreement, have there been any other promises that have been made to you that have either caused you to sign these documents or to indicate that you wish to enter a guilty plea in the case?
>
> DEFENDANT HARRIS: No, sir.
>
> THE COURT: Has anyone made any threats or in any way forced you either to sign these documents or to enter a guilty plea in the case?
>
> DEFENDANT HARRIS: No, sir.
>
> THE COURT: Do you understand that if I accept a plea of guilty from you, according to your plea agreement, you would be adjudged guilty of the charge that's contained in Count 1, and you would lose certain rights that you have, including the right to vote, the right to hold public office, the right to serve on a jury, and also the right to possess a firearm, or any type of a dangerous weapon. You do understand that?
>
> DEFENDANT HARRIS: Yes, sir.

[*Id.* at pp. 12-13] Harris agreed with the Court that a conviction for his drug conspiracy charge would carry a statutory minimum term of 20 years' imprisonment and a maximum term of life imprisonment and stated that he understood the statutory penalties were enhanced based on a prior felony drug conviction and the United States' corresponding 21 U.S.C. § 851 notice. [*Id.* at pp. 13-14; *see also* Record No. 299]

The Court then discussed the process of determining Harris' eventual sentence, explaining that the sentencing guidelines are advisory, the probation officer assigned to his

case would compose a PSR that accounts for a guidelines range calculation, the defendant would have the opportunity to object to the guidelines calculation outlined in the PSR, and any objections would be resolved prior to the commencement of a sentencing hearing.  [*Id.* at p. 16] The Court explicitly asked: "do you understand that until that process takes place it will be impossible for the Court, or for your attorney, to know exactly what the guideline[s] range would be in your case?"  [*Id.* at pp. 16-17] Harris stated that he understood this point.

The Court then discussed waiver language of the plea agreement.  After Harris indicated that he understood the relevant waivers of certain appellate and collateral attack rights, the Court continued:

> [L]et me mention to you that again you'd be able to appeal under the circumstances that we have just discussed with regard to the sentence, but you would not be able to withdraw from your plea agreement; for example, if your attorney's prediction or your belief about your guidelines were to be incorrect.  Also, if the sentence that's imposed in your case would be more severe than you expect, again, you might be able to appeal the sentence under the circumstances that we've outlined, but that would not be a reason to withdraw from the plea agreement provided that the sentence is a legal sentence.

[*Id.* at pp. 21-22]

Toward the conclusion of the change-of-plea hearing, the Court asked Harris to explain the facts that supported his guilty plea:

> THE COURT: Let's go back to the substantive charge, Mr. Harris.  And if you would, please, can you tell me in your own words what it was that you did to be guilty of that charge?
>
> DEFENDANT HARRIS: I agreed with other people to sell methamphetamine and heroin in the Pulaski County area.
>
> THE COURT: All right.  Was it in the amounts that are set forth in Count 1 of the superseding indictment?
>
> DEFENDANT HARRIS: Yes, sir.

- 5 -

THE COURT: And did your actions take place during the time that's been charged in the indictment in Count 1?

DEFENDANT HARRIS: Yes, sir.

THE COURT: And you indicated that one or more of your actions was in Pulaski County, which is in the Eastern District?

DEFENDANT HARRIS: Yes, sir.

[*Id.* at p. 26] The undersigned then inquired again into Harris' desire to plead guilty, asking "[i]s it your intention to enter a plea of guilty to this count because you are, in fact, guilty?" [*Id.* at p. 27] Harris affirmed that this was his intention and entered a guilty plea. [*Id.* at pp. 27-28] The defendant was initially scheduled to be sentenced on March 22, 2018. [Record No. 307]

The probation officer assigned to the case prepared a PSR. The PSR calculated a base offense level of 34. [PSR ¶ 64] It provided for a three-level acceptance of responsibility credit pursuant to U.S.S.G. § 3E1.1(a) as well as the four-level enhancement for Harris' role in the conspiracy that was outlined in the plea agreement. [*Id.* at ¶¶ 69, 73] However, it also incorporated three sentencing enhancements that were not documented in the plea agreement: (1) a two-level enhancement for possession of a dangerous weapon (a firearm) under U.S.S.G. § 2D1.1(b)(1); (2) a two-level enhancement for the use of violence, a threat to use violence, or a direction by the defendant to use violence under U.S.S.G. § 2D1.1(b)(2); and (3) a two-level enhancement for maintenance of a premises for the purpose of manufacturing or distributing a controlled substance under U.S.S.G. § 2D1.1(b)(12). [*Id.* at ¶¶ 65-67] Accounting for all of these adjustments, the PSR determined that the total offense level was 41, which provided for

- 6 -

a guidelines range term of imprisonment of 360 months to life when considered alongside Harris' criminal history category of V.[1]  [*Id.* at ¶¶ 74, 124]

Harris was not pleased with this calculation and wrote to the Court on March 9, 2018, indicating that Chandler "had [him] under the impression that [he was] facing a lot less time" than what the PSR documented when he agreed to plead guilty.  [Record No. 357] The Court held what was effectively a *Iles/Benitez* hearing regarding the deterioration of Chandler's relationship with his client on March 22, 2018.  During this hearing, the following exchange occurred:

> MR. CHANDLER: Judge, we did have discussions on a number of occasions concerning this case, the possible outcomes, potential outcomes of the case, either through trial or through a plea.  We talked about the possibility of a second 851 being filed against Mr. Harris, which could result in a life sentence.  We talked about if the case proceeded to trial, I felt like it increased his chances of obtaining a life sentence.  Basically we discussed that there were no– there really were no good options for Mr. Harris.  About the only thing he had going for him was his acceptance of responsibility, and the government and our good faith calculation of what we thought the applicable guidelines should be that were placed in the plea agreement.  We–we discussed all of the possible penalties, how the guidelines work, how his criminal history works, the fact that the guidelines are advisory and that we could make other arguments to the Court concerning his sentencing.  I think we covered every area that we could cover on advising him of the potential penalties and what he was facing.
>
> THE COURT: Did you have any conversations with members of the probation office about potential penalties in the case or guideline calculations?
>
> MR. CHANDLER: I did not, Judge.
>
> THE COURT: Because it appears that based on the information that was available to the probation office, that these enhancements that have been included in the presentence report were certainly within their contemplation . . . .

---

[1]     It is important to note that if Harris had not pleaded guilty and consequently had not received a three-level downward adjustment for acceptance of responsibility, he would have faced a guidelines range of life imprisonment.  *See* U.S.S.G. § 5A (Sentencing Table).

[Record No. 404, pp. 3-4]  After Harris stated that he felt his relationship with Chandler had deteriorated to the point that he did not think his attorney could continue to represent him in the case, the Court permitted Chandler to withdraw as counsel.  [*Id.* at pp. 9-10] Blandford was then appointed to serve as Harris' lawyer, and the sentencing hearing was continued.

Harris then filed a motion to withdraw his guilty plea on May 3, 2018, arguing, *inter alia*, that Chandler "became aggressive with him over signing the plea" and told him what to say during the December 2017 change-of-plea hearing.  [Record No. 410] The Court denied the motion after a May 11, 2018 hearing on the matter.  [Record No. 415]

Harris was sentenced later that day.  He objected to, *inter alia*, the PSR's U.S.S.G. § 2D1.1(b)(1), (b)(2), and (b)(12) enhancements that were not accounted for in the plea agreement.  [Record No. 442, p. 28] The Court heard evidence pertaining to these enhancements, including the testimony of three individuals involved in Harris' drug trafficking operation: Joseph Epperson, Paul Dupree, and Willie McCloud.  Harris contended that Dupree and McCloud were not credible witnesses because they had lied to investigators in matters related to this case.  [*Id.* at pp. 48-49, 68-70] Additionally, Epperson testified that Harris had a houseboat from which he distributed methamphetamine and heroin.   [*Id.* at pp. 41-42] The Court found all witnesses to be credible, overruled the objections to the three enhancements, and adopted the PSR's guidelines range calculation of 360 months to life imprisonment.  [*Id.* at pp. 106, 108] The Court sentenced Harris to a term of incarceration of 480 months' imprisonment, consecutive to any additional sentences imposed for pending warrants in two state court cases, to be followed by ten years of supervised release.  [Record No. 431]

Harris appealed, challenging the Court's denial of his motion to withdraw his guilty plea as well as the enhancement for maintaining a drug premises under U.S.S.G. §

- 8 -

2D1.1(b)(12).   The United States Court of Appeals for the Sixth Circuit rejected both arguments in an opinion dated February 4, 2019.  [Record No. 455] As relevant here, the opinion made several observations regarding the defendant's plea:

> This case does not present one of those occasions [to set aside a guilty plea]. The government had a strong case against Harris, whom police caught in the act of picking up over a kilo of methamphetamine.  Four days before his trial's start date, after most of his codefendants had pleaded guilty, Harris requested a change-of-plea hearing.  During an extensive plea colloquy in December 2017, Harris confirmed that he understood the charges, plea agreement, and potential penalties; that he was satisfied with counsel; and that he was voluntarily giving up his trial rights.  He admitted to the crime, testifying, "I agreed with other people to sell methamphetamine and heroin in the Pulaski County area." R. 402 at 26.  He does not now assert innocence.  There is nothing suspect about this plea.

[*Id.* at p. 5]

Harris filed the pending § 2255 motion on January 30, 2020.[2]  [Record No. 467]  His two ineffective assistance of counsel claims assert that Chandler failed to adequately investigate his defense and that he did not properly account for the eventual guidelines range (360 months to life) prior to advising him to plead guilty.  [Record Nos. 479, 485, 493, and 498] His four briefs on the matter also pervasively assert that Chandler forced him to plead guilty.

## II.

A movant must allege "an error of constitutional magnitude, a sentence imposed outside the statutory limits, or an error of fact or law that was so fundamental as to render the entire proceeding invalid" to obtain relief under 28 U.S.C. § 2255.  *Mallett v. United States*, 334 F.3d

---

[2]      Harris also filed a motion requesting that the undersigned to recuse himself from consideration of the § 2255 motion.  [Record No. 486] The Court denied the motion on April 22, 2020.  [Record No. 487]

491, 496-97 (6th Cir. 2003).   Harris' ineffective assistance of counsel claims allege a

constitutional error – violation of his Sixth Amendment right to counsel.

> A two-prong test governs such ineffective assistance of counsel claims:
>
> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.   This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.   Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "When deciding ineffective-assistance

claims, courts need not address both components of the inquiry 'if the defendant makes an

insufficient showing on one.'"  *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004).

"Whether counsel's performance was 'deficient' under the first prong is determined by

reference to 'an objective standard of reasonableness'—specifically, 'reasonableness under

prevailing professional norms.'"  *Hendrix v. Palmer*, 893 F.3d 906, 921 (6th Cir. 2018)

(quoting *Strickland*, 466 U.S. at 688).  "This inquiry 'consider[s] all the circumstances' of a

particular case." *Id.* (quoting *Strickland*, 466 U.S. at 688-89).  There is a "strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance."

*Strickland*, 466 U.S. at 689.  "In assessing performance, 'strategic choices made after thorough

investigation of law and facts relevant to plausible options are virtually unchallengeable; and

strategic choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on investigation.'"

*Hutchinson v. Bell*, 303 F.3d 720, 754 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690-

91).

- 10 -

"As to the second prong of the *Strickland* test, a [movant] must 'affirmatively prove prejudice.'" *Hendrix*, 893 F.3d at 921 (quoting *Strickland*, 466 U.S. at 693). "Counsel's errors must have 'actually had an adverse effect on [the movant's] defense." *Id.* (quoting *Strickland*, 466 U.S. at 693). "[I]n the context of plea negotiations, to demonstrate prejudice, a petitioner must establish a reasonable probability that, but for counsel's unprofessional errors, the outcome of the plea process would have been different." *Byrd v. Skipper*, 940 F.3d 248, 258 (6th Cir. 2019) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)).

Additionally, the Sixth Circuit has held that a defendant "cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material." *Hutchinson*, 303 F.3d at 754 (citing *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997)) (citation omitted).

## III.

### A.

Harris' first claim of ineffective assistance of counsel alleges that Chandler was ineffective by failing to properly investigate his defense. Harris raises largely the same arguments in support of this claim throughout his briefs: (1) counsel failed to investigate false statements of potential witnesses; (2) his answers during the plea colloquy do not defeat his failure to investigate claim because they were counsel's words and not his; and (3) the Court must rely on the record as a whole rather than his plea colloquy to determine whether counsel

- 11 -

appropriately investigated his defense.[3]  [Record Nos. 479, p. 1, 493, pp. 1, 3, 4, and 498, pp. 2-3]

Harris' primary argument is his contention that Chandler failed to consider the false testimony of potential witnesses.  He contends, albeit vaguely, that counsel could have discovered that several individuals who would be called to testify against him were lying.  Although the argument is difficult to follow, he likely refers to the credibility of two co-conspirators who testified at his May 11, 2018 sentencing hearing and had previously misled investigators about the case: Paul Dupree and Willie McCloud.

On this issue, the Court notes that Harris has pointed to no actual evidence that Chandler failed to consider the potential testimony of such witnesses.  And even if he did, he has provided no convincing argument that it was not a valid strategic decision to forgo such investigation and recommend a guilty plea for other reasons.  Therefore, Harris has failed to demonstrate deficient performance.

But assuming, *arguendo*, that Chandler failed to investigate witnesses or other aspects other aspects of Harris' defense, the argument is insufficient to establish prejudice.  As the Sixth Circuit noted in Harris' direct appeal, the KSP seized over a kilogram of methamphetamine when they arrested the defendant on June 9, 2016.  Additionally, another co-defendant, Joseph Epperson, stated in testimony during Harris' sentencing hearing that the defendant was using a houseboat to store and distribute methamphetamine and heroin.  Further,

---

[3]      He also states that counsel deficiently failed to investigate his defense when: (1) his attorney did not confer with the United States Probation Officer assigned to the case prior to the entry of the guilty plea; and (2) Chandler did not investigate possible sentencing enhancements.  [Record Nos. 493, p. 2-3 and 498, p. 2] However, these two arguments are more closely related to his second claim for relief.

Harris swore to tell the truth at his re-arraignment hearing and admitted guilt during the extensive plea colloquy by stating that he "agreed with other people to sell methamphetamine and heroin in the Pulaski County area" in the amounts charged against him.  [Record No. 402, pp. 3, 26]  "Absent extraordinary circumstances, a defendant is bound by his statements during a plea colloquy when the district court has scrupulously followed the procedures for taking the defendant's guilty plea." *Ewing v. United States*, 651 F. App'x 405, 409 (6th Cir. 2016) (citing *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)).  The record indicates that Harris conspired to distribute the controlled substances in the quantities alleged.  And Chandler testified that he informed Harris that going to trial could result in a life sentence.  Harris makes no convincing argument that he would not have entered a guilty plea if Chandler had investigated any other aspects of his defense given the evidence against him and the potential costs of going to trial.

Harris' claim that Chandler imposed his will on the defendant is also unfounded. Chandler's testimony at the *Iles/Benitez* hearing indicates that the attorney advised his client to plead guilty considering the extensive evidence and "the only thing [Harris] had going for him was [] acceptance of responsibility."  [Record No. 404, pp. 3-4] This was strategic advice and does not suggest any inappropriate pressure.  Harris also affirmed at his change-of-plea hearing that it was his intention to enter a guilty plea because he was, in fact, guilty.  And he agreed that he had not been threatened or forced to plead guilty.  He now points to no evidence to support a finding of deficiency or prejudice on this argument.

Additionally, Harris, through counsel, argued that Chandler inappropriately talked the defendant into pleading guilty in the motion to withdraw the guilty plea as well as the direct appeal to the Sixth Circuit.  [Record No. 410; *United States v. Harris*, No. 18-551, Record No.

23, p. 7 (6th Cir. Nov. 13, 2018)] The Court denied the motion to withdraw the guilty plea, and the Sixth Circuit affirmed on appeal.  Harris provides no substantive argument or evidence now to upset these prior decisions on the matter.

In summary, Harris' first claim for ineffective assistance of counsel fails on both the deficient performance and prejudice prongs of the *Strickland* test.  He has not shown that Chandler failed to investigate, and even if he had, he has not demonstrated prejudice considering the amount of evidence against him and the potential costs of going to trial.  And his argument that Chandler pressured him into pleading guilty is unsupported by the record and inconsistent with prior rulings on the issue.

### B.

Harris' second ineffective assistance of counsel claim fairs no better than the first.  This claim relates to Chandler's alleged failure to predict and advise Harris about the applicable guidelines range prior to his guilty plea.  Harris states that Chandler indicated his guidelines range would be 210-262 months' imprisonment, whereas his eventual guidelines range was 360 months to life imprisonment.  [Record Nos. 485, pp. 2, 4 and 498, p. 3]  As noted, Harris contends that Chandler did not anticipate or advise him about potential sentencing enhancements under the guidelines and states that the attorney did not confer with the probation officer assigned to the case prior to the entry of the guilty plea.  [Record Nos. 493, p. 2-3 and 498, p. 2]

An "attorney has a clear obligation to fully inform [his] client of the available options," and a failure to explain potential terms of imprisonment under the guidelines may constitute deficient performance.  *Smith v. United States*, 348 F.3d 545, 552-53 (6th Cir. 2003).  However, the failure of counsel to accurately predict the final guidelines range of a defendant

- 14 -

is not deficient or prejudicial in the context of an ineffective assistance of counsel claim. *United States v. Nimocks*, 234 F.3d 1270 (Table), 2000 WL 1679469, at \*4-5 (6th Cir. Nov. 2, 2000); *Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (finding that "counsel's performance was not deficient because it was based upon a reasonable decision to offer a guilty plea in exchange for a lighter sentence" and that the defendant failed to establish prejudice); *see also United States v. Stephens*, 906 F.2d 251, 254 (6th Cir. 1990) (concluding that "[t]he fact that the range was not determined beforehand, or was estimated incorrectly by his counsel, does not justify withdrawing the plea," and rejecting the claim that such a plea was "unknowing" and "unintelligent").

Again, neither the record of this proceeding nor the relevant case law support a finding of deficient performance.  Harris is correct that Chandler failed to confer with the probation officer prior to the entry of the guilty plea, but the attorney testified at the *Iles/Benitez* hearing that he "discussed all of the possible penalties, how the guidelines work, how his criminal history works, the fact that the guidelines are advisory and that we could make other arguments to the Court concerning his sentencing."  [Record No. 404, p. 4] And, as noted above, the advice to plead guilty was premised on the idea that an acceptance of responsibility credit was "the only thing going for" Harris.  [*Id.* at p. 3] Chandler indicated that he informed Harris about the possibility of a life sentence if the defendant were to be convicted at trial without an acceptance of responsibility credit.  At best, Harris can argue that this advice was a "strategic choice[] made after less than complete investigation." *Strickland*, 466 U.S. at 690-91.  It does not appear that such advice was unreasonable under the circumstances given counsel's testimony about other discussions with Harris, the evidence facing the defendant, and the fact that he could (and did) benefit from the acceptance of responsibility credit.  Therefore, the

record does not support deficient performance for the purposes of Harris' second ineffective assistance of counsel claim.

Harris also fails to demonstrate prejudice for several reasons.  First, the plea colloquy evidences that Harris desired to enter a guilty plea despite the fact that he understood his guidelines range could vary significantly from pre-plea predictions.  He indicated that no promises outside the plea agreement led him to plead guilty.  He also stated that he understood that it "[would] be impossible for the Court, or for [his] attorney, to know exactly what the guideline range would be" until after the entry of a plea of guilty and the preparation of the PSR.  [Record No. 402, pp. 16-17]  As Magistrate Judge Atkins notes [Record No. 495, p. 9], the Court explicitly warned Harris that he would not be able to withdraw his guilty plea if his "attorney's prediction or [his] belief about [his] guidelines were to be incorrect."  [*Id.* at pp. 21-22] Harris' agreement on these points indicate that he would have entered the plea regardless of whether Chandler's predictions were wrong and therefore suggest that any deficient performance by Chandler did not prejudice the defendant.

Second, as the United States argues, the terms of the plea agreement do not support a finding of prejudice.  [Record No. 488, p. 11] Paragraph 5 states that the United States and Harris "may object to or argue in favor of other [guidelines] calculations" apart from those recommended in the agreement and that the recommendation does not bind the Court.  [Record No. 306, ¶ 5] This paragraph necessarily contemplates the Court's potential imposition of sentencing enhancements such as the drug premises, use or threat of violence, and possession of a dangerous weapon enhancements that were not recommended in the plea agreement. Harris understood that the recommendations made in the plea agreement might not reflect all enhancements imposed at sentencing, but he nonetheless agreed to plead guilty.  Like the plea

colloquy, this indicates that the defendant was not prejudiced by any failure on the part of Chandler to anticipate potential enhancements.

Third, as noted above in the failure to investigate claim analysis, the record establishes that there was considerable evidence against the defendant and he admitted that he committed the crime charged. Harris has offered no evidence to suggest that he would not have taken the plea bargain if Chandler had predicted a 360 months-to-life guidelines range or accounted for the enhancements at issue given the ostensible possible consequences of going to trial. Thus, he has failed to demonstrate prejudice.

To the extent Harris contends that Chandler forced him to plead guilty in the context of his guidelines range-based ineffective assistance of counsel claim, the Court again rejects this assertion. The record does not support the claim that Chandler unduly influenced the defendant to plead guilty, and this Court as well as the Sixth Circuit have already declined to follow this argument. In short, Harris has failed to demonstrate deficient performance or prejudice as they pertain to his second basis for relief.

## IV.

Harris requests that the Court hold an evidentiary hearing on the issues he has raised. Regarding this request, "[u]nless the [§ 2255] motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). But "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (internal

- 17 -

quotation marks and citation omitted).  The record in this case includes, *inter alia*, the transcripts from the re-arraignment, *Iles/Benitez*, and sentencing hearings as well as the plea agreement.  These sources directly contradict Harris' arguments in support of his ineffective assistance of counsel claims.  Therefore, the request for an evidentiary hearing will be denied.

## V.

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2).  When the denial of a motion filed under § 2255 is based on a procedural ruling, the defendant must demonstrate that reasonable jurists would find it debatable whether the district court was correct in its ruling.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a § 2255 motion is denied on the merits, the defendant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id*.

Reasonable jurists would not dispute the Court's assessment of Harris' ineffective assistance of counsel claims.  Harris has failed to offer any evidence of Chandler's failure to investigate, and even if he had done so, he has failed to demonstrate that he was prejudiced to the extent that he would not have taken the plea.  And even though Harris is correct to point out that Chandler did not confer with the United States Probation Office regarding the defendant's potential guidelines range and sentencing enhancements, his advice to plead guilty was neither deficient performance, nor prejudicial considering the record as a whole.

Finally, there is no evidence to support Harris' claims that Chandler forced him to plead guilty, and this argument has already been rejected by courts on two occasions.  Thus, a COA shall not issue.

**VI.**

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.      Defendant/Movant Timothy Harris' motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 [Record No. 467] is **DENIED**.  His claims are **DISMISSED**, with prejudice.

2.      Harris' request for an evidentiary hearing is **DENIED**.

3.      The Magistrate Judge's Report and Recommendation [Record No. 495] is **ADOPTED** and **INCORPORATED** here by reference.

4.      A Certificate of Appealability shall not issue.

Dated:  June 25, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky